[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This decision dissolves the twelve-year marriage of Les and Rajesree Rose. As the parties have previously entered into a court-approved stipulation regarding custody and visitation of their minor children, this memorandum of decision will address financial questions, allocation of marital property and debt, alimony, child support, and payment of counsel fees. The Judicial District of Danbury referred the case to the regional family trial docket for trial of these issues, held on three days in June of this year. Each party testified at trial, as did Sharon Dornfeld, the court-appointed guardian ad litem (GAL) for the two minor children. Both parties also introduced various exhibits into evidence.
 I — Findings of Fact[1]
The court finds that it has jurisdiction over the marriage. One party has resided in Connecticut continually for more than one year prior to the bringing of this action. The parties were married in Queens, New York, on July 10, 1990. Two minor children, Nicholas Rose, born on October 6, 1992, and Tiffany Rose, born on November 27, 1995, are legal issue of the marriage. No other minor children have been born to the wife since the date of the marriage. The parties have not been recipients of state assistance. The marriage between the parties has broken down irretrievably with no reasonable hope of reconciliation.
The parties met during the mid-1980s in Canada, where the defendant was then living with her parents. After they were married, the defendant went to Queens, New York, to live with the plaintiff. They resided there until moving to Danbury in 1999 for what they regarded as a better life for their children. There are two versions, his and hers, of why their marriage has broken down. The plaintiff claims that he had believed they had a happy marriage until his wife unexpectedly left him in December 2000, took a bus back to Canada with their two minor children, and then had him served with Canadian legal process seeking a restraining order CT Page 11095 against him and custody of the two children. He asserts that claims she has made in litigation here and in Canada since their separation have caused the marriage, at least in his mind, to break down. The defendant, on the other hand, testified that she was unhappy throughout the marriage for a variety of reasons that began even before the wedding, when the plaintiff, she claimed, refused to come to Canada for a wedding that they had previously agreed would occur there, and for which her family had already booked a hall and ordered invitations, and insisted that they instead elope in Queens; she testified that she agreed to do so because she was pregnant by him. She further testified that throughout the marriage the plaintiff made it difficult for her to visit her family in Canada, had a drinking problem, spent many evenings away from home drinking with his friends, physically and verbally abused her, and constantly argued with her.
Although the defendant's claims of abuse as the causes of the marital breakdown would, if credited, be a sufficient basis for affecting the court's financial orders, the court does not find most of her account credible. The plaintiff denied the defendant's various accusations of his wrong-doing and the court found his testimony on these matters more credible than hers. Yet her farewell note, written when she fled the marital home in December 2000 with the children, shows a woman very unhappy in her marriage, however unbeknownst to her husband. The plaintiffs work hours in the last years of the marriage kept him away many evenings and his time away from home increased after the move to Danbury because of the longer commute. The defendant was strongly emotionally tied to her family in Canada and evidently missed living there with them. As the court does not find the defendant's claims of physical, verbal and substance abuse credible, it can only conclude that in this marriage, as many others, the parties fell out of love for reasons that cannot be precisely determined.
The plaintiff, who turned 44 years old during the time of trial, is in good health. A high school graduate, he has also completed three years of college-level engineering courses, holds a New York stationery engineering license, and has almost completed a refresher course to prepare him to take the Connecticut examination for a similar license. He is presently employed as an operating engineer by the New York Times Company and earns a base pay and guaranteed overtime of $1,261 per week. He also regularly has the opportunity for additional overtime, from which he earns approximately an additional $167 per week. The plaintiff works on Monday and Tuesday from 2 p.m. to 10 p.m., Wednesday and Thursday from 10 p.m. to 6 a.m. and on Sunday from 4:30 a.m. to 2 p.m. His commute to the City takes him between 75 and 90 minutes during the week, and somewhat less on Sunday. As a union member, he does have some flexibility CT Page 11096 to re-arrange his hours, so that he sometime spends Sundays with the children, but he is also subject to being asked to work extra days or hours.
The defendant was 34 years old at the time of trial and also in good health. She has minimal job skills. A high school graduate, she worked as a billing and data entry clerk until marrying the plaintiff. She did not work during the marriage but by agreement with the plaintiff stayed at home to raise their children until she left him in December 2000. While in Canada during the court proceedings she initiated there, she did volunteer and course work to develop office job skills. In February 2001, the Ontario Court of Justice dismissed the petition she had filed there, assigned temporary custody of the children to the plaintiff, and allowed him to bring them back to Danbury. The defendant also returned to Connecticut and in July obtained a job as a data entry clerk at Special Testing Laboratory in Bethel, where she worked between 30 and 40 hours a week for the next nine months earning $10 an hour. After being laid off there on March 30 of this year, she collected $181 per week in unemployment compensation benefits through the time of trial. She engaged in only minimal efforts to find new employment although in June she did enroll in a job-training course offered by the State Department of Labor that had a possibility of job placement upon completion.
Under the parties' Stipulation as to Custody and Visitation, approved by the Court, Fischer, J., on May 7, 2002, the parties share joint custody but the two minor children live primarily with the plaintiff. The defendant has parenting time Mondays and Tuesdays from 5:30 p.m. to 7:30 p.m., from Friday to Sunday evening two weekends a month, and from Saturday to Sunday evening on another weekend each month. Because of the plaintiffs work and commute schedule, he has hired a distant relative for $150 per week as a live-in nanny to provide care for the children when he cannot care for the children or they are not with their mother.
 II — Discussion of Financial Issues
Since the parties have agreed on custody and visitation matters, the issues facing this court concern the relevant financial orders: child support, alimony, classification and distribution of marital property, and allocation of counsel fees. The major assets of the parties are the marital home located at 4 Nancy Drive in Danbury and various deferred compensation plans the plaintiff has through his employment. The parties agree that the marital home is presently worth $250,000, and the court so finds, with a first mortgage of approximately $187,000. Their total equity in the home is thus approximately $63,000. Both parties agree that the plaintiff may have exclusive use of the marital home to house the CT Page 11097 parties' children until the youngest turns 18; the defendant seeks an order that she then receive half of the value of the marital home. She has also asked the court to award her half the value of the defendant's various deferred compensation benefits, lifetime alimony of $380 per month, and an order requiring the plaintiff to pay her counsel fees and those of the minor children. The plaintiff has requested that the court order the defendant rehabilitative alimony of $100 per month for five years and agrees in concept to a fifty-fifty division of the deferred compensation, although he requests the court award the defendant only a coverture fraction of his defined benefit plan.
A. PROPERTY
There are three stages of analysis regarding the equitable distribution of each resource; first, whether the resource is property within Section46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties. Krafick v. Krafick, 234 Conn. 783, 792-93 (1995). The court finds that all items listed on each party's financial affidavit as assets are property within the meaning of C.G.S § 46b-81 and hence subject to equitable distribution by the court. Although the plaintiff, as the wage earner during the marriage, played the predominant role in directly acquiring these assets, the parties mutually agreed that the defendant would stay at home and care for their children. She thereby forewent opportunities to earn her own income, to develop a career, or to acquire and enhance occupational skills. With few vocational skills, she must now do so. At age 34, ten years less than the plaintiff, however, the defendant still has many years left in which to gain job skills and pursue a gainful career. The plaintiff, trained as a building engineer and having served in that capacity for several years, obviously has significantly greater vocational skills and employability prospects than she does; at age 44, however, without a baccalaureate or advanced degree, his advancement opportunities are probably also somewhat limited in the engineering profession.
The total value of the plaintiff's deferred compensation plans is $80,922.70 as of the end of June 2002. This amount includes a value of $33,169 for the defendant's defined benefit plan, which had a total benefit value of $897.11 per month as of February 22, 2002, and would entitle the plaintiff to receive a monthly pension payment of $898 when he turns 65. Thus, the other portions of his deferred compensation — which include a 401K plan, a union annuity, and an employer-sponsored payroll investment plan — are worth 47,753.70 as of the end of June. CT Page 11098
The defendant seeks an equal division of the deferred compensation plans and the value of the marital home. She has agreed to defer sale of the house and distribution of its equity so that the children may remain there until they reach the age of majority. The plaintiff agrees to this request except that he requests a coverture portion of his defined benefit pension. The court finds that a fair and equitable distribution of the marital property is to divide the total value of the property equally except for applying a coverture factor[2] to the plaintiffs defined pension plan. The court also concludes, however, that it is most appropriate, fair, and equitable to leave the marital home exclusively in the plaintiffs name, so as to eliminate future financial entanglement of the parties. The court will accordingly allocate the plaintiffs deferred compensation plans so that the net effect of the court's property distribution is to award the defendant one-half of the total value of the marital home and deferred compensation (less the coverture fraction of the defined benefit plan).
B. ALIMONY
The defendant makes two principal arguments in support of her request for periodic alimony of $380 per month. The court has already rejected her claim that the plaintiff is responsible for the marital breakdown, but her second argument, based on her limited job history and less favorable vocational prospects than the plaintiff that are both due in part to the parties' agreed-upon marital roles, deserves more credence. The plaintiff earns more than $70,000 per year, while the evidence does not show her earning capacity at any more than $10 per hour for $40 hour week, or approximately $21,000 per year. On the other hand, while her unwillingness to look seriously for work in the months after she was laid off early this year prevented the court from receiving evidence as to whether she could presently earn more than she did at Special Laboratory, there is no reason to think that in the future her income prospects are permanently so limited. It will take her some time to develop the skills, job history, and occupation to earn a more robust income. At her age, however, and since she is in good health, doing so is certainly a reasonable prospect. Not having day-to-day child care responsibilities will afford her a degree of flexibility that is conducive to job-seeking and career development. The court thus concludes that durational alimony of $225 per week for eight years will provide the defendant with support for a sufficient period, in recognition of all the factors the court must consider, to allow her, in the exercise of reasonable efforts, to attain a position of being able to support herself. CT Page 11099
The court has set the term of alimony in contemplation of the length of the marriage; the court's division of assets; all the statutory factors; the need of the defendant to acquire and develop improved occupational skills in order to be able to support herself; and providing her sufficient time to do so.
C. CHILD SUPPORT
With regard to child support, the principal issue is the plaintiff's earning capacity to use for purposes of calculating an award. The court finds that although she presently has no earned income, since she was laid off from her last job and only made minimal efforts to obtain new employment, there are no impediments to her working full-time. The court further finds that, based on her level education, previous employment and earnings, she has a present earning capacity of at least $10 per hour.
The child support guidelines require the court to determine each party's actual current gross and net income and, using those figures, determine the presumptive current support amount. See Regs. Conn. State Agencies, § 46b-215a-2a (c) and (d). The court finds here that the presumptive current support amount, based on each party's actual incomes at the time of trial, would require the defendant to pay the plaintiff the sum of $35 per week in child support.
Under § 46b-215a-3 (a) of the child support guidelines deviation criteria, the presumptive child support amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case. The guidelines specify that a party's earning capacity may be considered as a criterion for deviating from the presumptive support amount:
 In some cases, a parent may have financial resources that are not included in the definition of net income, but could be used by such parent for the benefit of the child or for meeting the needs of the parent. The following resources may justify a deviation from presumptive support amounts: . . . the parent's earning capacity. . . .
§ 46b-215a-3 (b)(1)(B), Regs. Conn. State Agencies. The court finds that the defendant has financial resources available to her, in the form of her earning capacity, which she may use to support her children. The court finds that, in view of the defendant's earning capacity, it would be inequitable and inappropriate here to apply the presumptive amounts in determining child support. Based on the court's finding that she has CT Page 11100 earning capacity at minimum wage of $10 per hour for at least 40 hours per week, the court finds her present earning capacity to be $400 per week gross income. Applying the calculations and methodology of the child support guidelines, the court orders defendant to pay plaintiff child support of $85 per week plus her share of unreimbursed child care and health-related expenditures. The court's allocation of responsibility for unreimbursed health-related expenses and work-related daycare also tracks guideline calculations based on the plaintiffs earning capacity.
D. COUNSEL FEES
The defendant has requested that the plaintiff pay her counsel fees and those of the GAL. The plaintiff requests that each party pay its own counsel fees and that they split the fees for the GAL. Pursuant to general statutes § 46b-62, the court has authority to order payment of counsel and GAL fees after consideration of their respective abilities and the criteria set forth in section 46b-82. Moreover, the court must take care that its determination of this question does not substantially undermine its other financial orders.
 In determining whether to award counsel fees the trial court must consider the total financial resources of the parties in light of the statutory criteria. The statutory criteria are to be applied in light of the following three broad principles: First, such awards should not be made merely because the obligor has demonstrated an ability to pay. Second, where both parties are financially able to pay their own fees and expenses, they should be permitted to do so. Third where, because of other orders, the potential obligee has ample liquid funds, an allowance of counsel fees is not justified. If, on the basis of the total financial resources of the parties, the trial court concludes that denying an award of counsel fees would not undermine its purpose in making its prior financial orders, the court should allow each party to pay his or her own counsel fees.
(Citations omitted; quotations omitted.) Miller v. Miller,16 Conn. App. 412, 418, 547 A.2d 922 (1988).
The court has reviewed the attorney's fee affidavit submitted by the GAL and finds that a fair and reasonable fee for the services she performed is $5,270.77. CT Page 11101
After losing her job at the end of March, the defendant made only limited attempts to obtain work or replacement income. In her own testimony she admitted spending only six to eight hours a week seeking employment and checking the newspaper once a week for employment ads. Her unemployment benefits were $219 less per week than her average weekly wage this year before being laid off. The defendant's minimal job-seeking efforts thus limited the amount of money she had available to her this year to meet her expenses, including counsel and GAL fees. Neither party has liquid funds available to pay counsel fees. Taking into consideration all the statutory factors mandated by § 46b-62, as elucidated by the Appellate Court in Miller v. Miller, the court awards no counsel fees to either party and orders them to divide equally the fees for the GAL.
 III — Orders
After considering all the statutory factors set forth in General Statutes § 46b-81 (c) as to equitable distribution of property, § 46b-82 as to alimony, § 46b-84 as to support of a minor child, §§ 46b-215a-1 et seq., Regs. Conn. State Agencies, as to child support, and § 46b-62 as to counsel fees, together with applicable case law and the evidence presented here, the court hereby enters the following orders:
1. Dissolution of Marriage: The marriage of the parties, having broken down irretrievably, is hereby dissolved.
2. Parenting Orders: The court incorporates by reference into its judgment here the parties' stipulation of May 7, 2002, as to custody and visitation of the children, which the court that date adopted and entered as an order of the Superior Court.
3. Equitable distribution of property: Each party may retain, free and clear of the other, all assets listed on their respective affidavits, except as set forth below.
 a. The court awards title and interest to the marital home at 4 Nancy Drive in Danbury to the plaintiff husband, free of any claim of the defendant. No later than ninety days of the date of this decision, the defendant shall by quitclaim deed convey to the plaintiff all of her right, title and interest in such property. After the plaintiff has conveyed her interest in the house to the defendant, the defendant shall indemnify the plaintiff and hold her harmless for any liability CT Page 11102 she may incur for mortgage or real estate taxes accruing or payable after the date of her quitclaim deed to him.
 b. The court awards to the defendant the value, as of the date of this decision, of the plaintiffs 401 K, Local 30 union annuity and payroll investment plan, by way of qualified domestic relations order. The plaintiff shall prepare and the defendant shall share equally the cost of preparing the QDROs. The court will retain jurisdiction for purposes of approving the QDROs.
 c. As for the plaintiffs defined benefit contribution pension from the New York Times, the court awards the defendant 60 per cent of the value of the pension as of the date of this decision, by way of qualified domestic relations order. The plaintiff shall prepare and the parties shall share equally the cost of preparing the QDRO. The court will retain jurisdiction for purposes of approving the QDRO.
 d. The plaintiff shall have title to and possession of the Saturn motor vehicle, and the defendant title to and possession of the Ford Escort, each vehicle free and clear of any claim from the other party. Each party shall transfer all its ownership interest in accordance with this order to the other within thirty days. Each party shall be responsible, from the date of this decision, for motor vehicle tax, insurance, registration fees and any expenses associated with the vehicle awarded to it, and shall indemnify and hold the other party harmless from any such expenses.
 e. The parties indicated at trial they had amicably resolved distribution of household furnishings in the marital home except for the bedroom suites. The court awards possession of two bedroom suites to the plaintiff and the one in the bedroom not used by the plaintiff or minor children to defendant. The court will retain jurisdiction over any dispute regarding these assets, but only after good faith efforts at mediation with Family Relations.
CT Page 11103
 f. The court awards to the plaintiff the full amount of any tax refund for 2001.
4. Financial responsibility for indebtedness: Each party shall be responsible for paying all debts and liabilities listed on their respective financial affidavits, and shall indemnify and hold the other harmless thereon, except as set forth below:
 a. As for any debts the plaintiff discharged in bankruptcy as to which a creditor or obligor seeks payment from the defendant, the plaintiff shall pay any debts the defendant becomes legally obligated to pay, and shall indemnify and hold the defendant harmless thereon.
 b. The plaintiff shall be responsible for paying past due real estate taxes, and interest due thereon, on the marital home, and for paying any unpaid state, federal, or local taxes, or related penalties, fees, or interest, related to joint income tax returns filed during the marriage or to income he earned during the marriage, and shall indemnify and hold the defendant harmless thereon.
5. Alimony: The court orders the plaintiff to pay the defendant alimony in the amount of $225 per week for eight years from the date of this decision. Alimony shall also terminate upon death of either party, remarriage of the defendant, or her cohabitation with a male pursuant to General Statutes § 46b-86 (b).
6. Life Insurance: The plaintiff shall maintain the Middlesex life insurance listed on his current financial affidavit for the benefit of the defendant until the plaintiffs alimony obligation has ended, or the youngest child reaches the age of majority, whichever occurs later.
7. Child Support:
 a. Basic Orders: The defendant shall pay the plaintiff child support in the amount of $85 dollars per week until the older child graduates from high school or reaches age nineteen, whichever comes later. After that, the non-custodial parent shall pay child support in an amount to be determined by a court of competent jurisdiction based on then-applicable CT Page 11104 child support guidelines.
 b. Unreimbursed expenses for the minor children. Within thirty days after presentation of proof of such expenses, the defendant shall pay the plaintiff 16% of
 i. The minor children's unreimbursed health-related[3] expenses, and
 ii. Child care expenses reasonable and necessary for the plaintiff to maintain employment.
 c. Health insurance
 i. For the minor children: Under General Statutes § 46b-84 (f), the court dissolving a marriage must include provisions in the support order for health insurance coverage for any minor children. The evidence established that, as of the end of trial, the plaintiff had health insurance coverage for both minor children through his place of employment. The court orders the plaintiff to continue providing health insurance for the minor children that is comparable in scope or better than that offered under the HUSKY plan established in general statutes §§ 17b-289
et seq. so long as such insurance is available to the plaintiff through his employment at a cost less to him than HUSKY insurance. If such cost exceeds the cost of HUSKY insurance, or if the plaintiff loses the right to obtain health insurance for the minor children through his employment, then the primary custodial parent of each minor child shall maintain health insurance for that particular child.
 ii. For defendant: The plaintiff shall cooperate fully in providing whatever information the defendant may require should she elect to obtain COBRA health coverage from plaintiffs health insurance plan.
8. Tax Exemptions: The parties shall equally divide the child tax CT Page 11105 exemptions and child tax credits except in years when they are not able to claim such for an even number of children. When the parties are only able to claim tax exemptions for an odd number of children, they shall divide them unequally and alternate years in which one may claim more than the other; in the first such year, defendant may claim the greater number of exemptions and credits.
9. Counsel fees: Each party shall be responsible for paying its own attorney's fees. The parties shall split equally the fees of the guardian ad litem and shall pay the same, or make arrangements satisfactory to the GAL for such payment, within 90 days of this decision.
10. The defendant shall make diligent efforts to obtain gainful, full-time employment. She shall immediately notify the plaintiff of any change in her income or employment status.
11. Judgment will enter accordingly.
BY THE COURT
STEPHEN F. FRAZZINI, JUDGE